**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

PARTNERS IN NUTRITION,

                               Civil No. 22-2195 (JRT/JFD)

                   Plaintiff,

v.

MINNESOTA DEPARTMENT OF
EDUCATION,

                  Defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

---

Emily Asp, Kevin D. Conneely, **STINSON LLP,** 50 South Sixth Street, Suite 2600, Minneapolis, MN, 55402, Mark E. Weinhardt, **THE WEINHARDT LAW FIRM,** 2600 Grand Avenue, Suite 450, Des Moines, IA 50312, for Plaintiff.

Christopher A. Stafford, Kristine K Nogosek **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, #900, St. Paul, MN 55101, for Defendant.

Partners in Nutrition, d/b/a Partners in Quality Care, ("Partners") filed this action against the Minnesota Department of Education ("MDE") alleging violations of Section 17 of the National School Lunch Act and Title 7, Chapter 226 of the Code of Federal Regulations governing the administration of Child and Adult Care Food Program ("CACFP"). Partners also alleges a violation of the Due Process Clause and seeks declaratory and injunctive relief. Partners alleges that MDE illegally terminated Partners from CACFP on May 27, 2022, violating the clear statutory and regulatory framework governing the program. Partners has appealed this alleged illegal termination through

MDE's administrative appeal process, but in the interim filed a Motion for a Temporary Restraining Order ("TRO") and/or Preliminary Injunction pursuant to Fed. R. Civ. P. 65. Based on parties' consent, the Court will construe Partners' motion as a Motion for a TRO. Because Partners has failed to show a likelihood of success on the merits or irreparable harm, the Court will deny the motion.

## BACKGROUND

I.    **FACTS**

Partners is a nonprofit organization that works as a CACFP "sponsor," partnering with organizations such as early childhood programs and adult daycare centers that feed healthy and nutritious meals to qualifying children and dependent adults, called "sites." (Compl. ¶ 1, Sept. 8, 2022, Docket No. 1.)  CACFP allows sponsors to assist sites in the administration of the CACFP by acting as third-party intermediaries between the state administrative agency, here MDE, administering the program and the sites that provide food to underserved and under privileged children and adults.  Sponsors provide consulting, training, compliance monitoring, and additional resources to help programs succeed.  (*Id.* ¶¶ 2, 21.)

Partners' participation in CACFP is governed by the regulations and guidance promulgated by USDA found in Title 7, Chapter 226 of the Code of Federal Regulations, and as the state agency administering the program, MDE is also required to follow such regulations.  (*Id.* ¶¶ 18, 28-33.)  These regulations impose a variety of recordkeeping and monitoring requirements on sponsoring organizations like Partners and imposes

monitoring and review requirements on state agencies such as MDE.  (*Id.* ¶¶ 33-34.)
These procedures include a fair hearing prior to a proposed termination determination
and allow for an institution's suspension with a hearing if the State agency determines
that the institution knowingly submitted a false or fraudulent claim for reimbursement,
which constitutes a "serious deficiency."  (*Id.* ¶¶ 37-40.)  Administrative appeals of MDE
actions taken under CACFP are reviewed by the MDE Appeal Panel, a three-person panel
of independent and impartial MDE staff.  (*Id.* ¶ 43.)

On January 20, 2022, the United States Department of Justice ("DOJ") unsealed
three search warrants directed toward businesses and individuals in Minnesota who were
involved in providing CACFP-governed food service and alleged to be involved in a
fraudulent scheme whereby they submitted claims for reimbursement for millions of
dollars that were not used to provide the necessary meals.  (*Id.* ¶ 55.)

## II.     PROCEDURAL HISTORY

Following the DOJ's actions, MDE sent several communications to Partners.  First,
on the same day the DOJ unsealed the search warrants, January 20, 2022 (January 20
Letter), MDE sent notice to Partners that MDE was suspending all payments "in response
to the federal investigation of organizations participating in the USDA Child Nutrition
programs for mail fraud, wire fraud, conspiracy and money laundering," referencing
warrants and affidavits that document site operators and organizations of which a
number "are connected to sites sponsored by [Partners]."  (*Id.* ¶ 71.)  On January 31
("January 31 Letter") MDE notified Partners of its proposed termination and

disqualification based on that same evidence.   (*Id.* ¶ 76.)   The letter stated that it concerned a Serious Deficiency Notice dated March 31, 2021, outlining Partners' failure to conform to the CACFP performance standards and the finding that Partners had not fully and permanently corrected the cited serious deficiencies.  (*Id.*)

On February 2, 2022, MDE sent Partners an email with "Meal Claim Instructions," a list of documentation MDE was now requiring Partners to submit during the initiated suspension period from the January 20 Letter, which Partners alleges the ordinary CACFP procedures do not require.  (*Id.* ¶¶ 77-81.)  In response to these three communications, Partners filed an appeal to the MDE Appeal Panel in a consolidated proceeding, arguing that MDE was attempting to suspend and propose termination and disqualification based on an unrelated and previously resolved "serious deficiency."  (*Id.* ¶ 83.)

On May 17, 2022, the MDE Appeal Panel reversed MDE's action, determining that "CACFP federal regulations under Chapter 226 provides for a set of procedural requirements for proposed suspension of participation," requiring that MDE "issue a notice" containing specified criteria and "appoint a suspension review official to investigate and issue a suspension review decision."  (*Id.* ¶ 87.)  Since the administrative record did not reflect these steps, the Panel found that MDE "either cited an incorrect federal regulatory provision for its action of 'withholding' payments, or did not conduct a suspension proceeding in a manner consistent with 7 C.F.R. § 226.6(c)(5)(ii)(B)."  (*Id.* ¶ 88.)  The Panel further found that MDE failed to establish that it provided sufficient notice

CASE 0:22-cv-02195-JRT-JFD   Doc. 30   Filed 10/04/22   Page 5 of 15

concerning its allegations in the January 31 Letter.  (*Id.* ¶ 89.)  The Panel required MDE to reassess its actions consistent with the applicable federal regulations and procedural rules.  (*Id.* ¶ 90.)

Earlier, between March and April, MDE had denied 258 individual claims for reimbursement for meals and snacks served in November and December 2021 by nearly every site for which Partners was the sponsor.  (*Id.* ¶¶ 93-95.)  MDE explained that such actions were taken in response to the suspension of payment action issued in the January 20 Letter and the February 2 meal documentation instructions.[1]  (*Id.* ¶ 96.)  Partners challenged these denials to the MDE Appeal Panel but the panel rejected Partners' arguments.[2]  (*Id.* ¶ 99.)  Partners' challenge to the claims denials is currently on appeal before the Minnesota Court of Appeals.  (*Id.*)

On May 27, 2022, MDE sent a letter ("May 27 Letter") to Partners immediately terminating them from CACFP participation and withholding all funds from past or future claims submitted on behalf of its sites and informed Partners that MDE was withholding payments in response to ongoing noncompliance based on new information released.  (*Id.*

---

[1] Partners alleges that MDE's combining of hundreds of individual claim denial into one singular action obstruct Partners' meaningful ability to respond to and appeal any one claim for reimbursement, because MDE's denial of any one claim is itself an appealable action.  (*Id.* ¶¶ 97-98.)

[2] It appears that Partners has appealed the MDE's denial of the November and December 2021 reimbursements on several occasions.  It is unclear from Partners' Complaint both when Partners first appealed the November and December reimbursement denials or when the MDE Appeals Panel conducted proceedings and subsequently rejected Partners' arguments.

¶¶ 101-03.)  This new information concerned a May 20 unsealed search warrant affidavit as part of the federal investigation into the alleged defrauding scheme.  (Defs.' Mem. Opp. Mot. TRO at 5, Sept. 28, 2022, Docket No. 23.)

The May 27 Letter further claimed that the action was taken "based on MDE's determination that the role of Partners in the federal food aid fraud, as demonstrated by the federal affidavits, cannot be corrected by imposing additional conditions found in 2 CFR 200.208."  (Compl. ¶¶ 102-03.)  Partners has challenged the validity of the May 27 Letter through the MDE administrative appeals process and the MDE Panel heard arguments on September 12, 2022.  (*Id.* ¶ 116.)  That decision is due no later than October 14.

Between June and July 2022, MDE sent communications to Partners denying then-pending site applications and all pending claims for reimbursement between November and July, pursuant to MDE's May 27 Letter that immediately terminated Partners and withheld payments.  (*Id.* ¶¶ 105-08.)  On August 10, MDE sent a letter to Partners reminding them that they were terminated from CACFP participation.  (*Id.* ¶ 115.) Following this letter, Partners alleges that it was forced to temporarily suspend all CACFP-related operations.  Partners then brought the current action, seeking declaratory and injunctive relief.  (*Id.* ¶ 118.)  Partners then filed this Motion for a TRO and/or Preliminary Injunction, seeking an order from the Court enjoining MDE from enforcing the May 27 Letter.

## DISCUSSION

### I.   STANDARD OF REVIEW

Courts evaluating a motion for preliminary injunctive relief[3] weigh four factors, commonly referred to in this Circuit as the *Dataphase* factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm injunctive relief would cause to the other litigants; and (4) the public interest.  *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

When applying these factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)).  That said, "injunctive relief is an extraordinary remedy and the movant has the burden of establishing the propriety of an injunction."  *Watts v. Fed. Home Loan Mortg. Corp.*, No. 12-692 SRN/JSM, 2012 WL 1901304, at *3 (D. Minn. May 25, 2012).

---

[3] Whether the Court treats the motion as one for TRO under Fed. R. Civ. P 65(b) or Preliminary injunction under Fed. R. Civ. P 65(a), the standards are the same for either request.

II.     **ANALYSIS**

A.  **Abstention**

As a threshold issue, the Court considers MDE's argument that federal abstention doctrines require the Court to abstain from reaching the merits of this motion in light of the MDE Appeal Panel's current proceeding and subsequent ruling required by October 14.  MDE cites *Armstrong v. Exceptional Child Ctr, Inc.*, a case that concerned a state action alleged to have violated Medicaid requirements.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).  In *Armstrong*, the Court determined that the Medicaid Act implicitly precluded private enforcement of § 30(A), and thus respondents could not, by invoking equitable powers, circumvent Congress's exclusion of private enforcement.  *Id.* at 328.

MDE argues that in the present case, Congress and the USDA have created a regulatory scheme that gives state agencies, in this case MDE, discretion in how to exercise its duties under the CACFP and provides a right to regulated parties to seek redress of state regulatory actions through the administrative appeal process outlined in 7 C.F.R. § 226.6(k), intending it to be the exclusive remedy.  Additionally, MDE asserts that because Partners has availed itself of that remedy, Partners should not be able to collaterally attack those same issues in this Court, suggesting that this Court is without authority to enjoin state action when those same issues are being heard in an administrative appellate proceeding.

The Court is not persuaded that *Armstrong* dictates a particular result as to the enforceability of Partners' claims in this case. First, *Armstrong* concerned a specific Medicaid provision, and its analysis was context-specific to those facts and the governing tests of that provision's applicability. Even within the provisions of the Medicaid Act, *Armstrong* could be distinguished. *See Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1006 (D. Minn. 2016) *("Armstrong* does not provide a basis for an across-the-board rejection of all private enforcement actions under the Medicaid Act's numerous varied provisions.").

Second, even if *Armstrong* provided an adequate parallel, important to the Court's finding that Congress intended to provide an exclusive remedy by withholding Medicaid payments, was that the provision was *combined* with the "judicially unadministrable nature of § 30(A)'s text." *Id.* at 328 ("The provision for the Secretary's enforcement by withholding funds might not, *by itself,* preclude the availability of equitable relief."). Contrary to the unspecific mandate in that Medicaid provision, in the context of this case the USDA has promulgated specific regulations and procedures that are judicially administrable.

Lastly, this Court has the authority to enjoin state action when that action is the subject of a pending administrative appellate proceeding because although "State agencies may perform functions of a judicial, quasi-judicial, or factfinding character," these agencies and "[t]he proceedings of such agencies are not judicial and are without

judicial effect." *Entergy, Arkansas, Inc. v. Nebraska*, 210 F.3d 887, 901 (8th Cir. 2000).
Thus, the Court will consider Partners' claim.

###### B.    Likelihood of Success on the Merits

Partners argues that it is likely to succeed on the merits because this issue is ripe
for review and MDE's May 27 Letter violated the laws and regulations controlling the
CACFP program.  MDE counters that Partners is not likely to succeed because MDE has
followed the appropriate federal regulations in taking administrative action to terminate
Partner's participation in CACFP and even if it did err, the federally mandated appeal
procedure, administered by MDE, is the appropriate form of redress.

The record before the Court at this time does not demonstrate that Partners is
likely to succeed on the merits.  While 7 C.F.R. § 226.6 does prescribe the procedures and
methods for termination, it does not prevent the MDE's use of discretion in monitoring
compliance and is not so limiting as to prevent MDE from looking to other provisions in
the USDA regulations.  As MDE suggests, one provision does not completely supplant the
other.  Moreover, the previous serious deficiency letter to Partners concerned controls
and management of financial responsibility, and MDE states that the termination was
related to those same deficiencies.  The federal criminal investigation then revealed
Partners' alleged role as serving as sponsor to entities that allegedly committed fraud,
thus demonstrating that Partners did not have the appropriate controls in place to
differentiate between legitimate and fraudulent claims.  *See* 7 C.F.R. §
226.6(b)(2)(vii)(C)(2) (the state agency must confirm that a sponsoring organization has a

financial system with management controls, including a system of safeguards and controls to prevent and detect improper financial activities by employees).  The record does not demonstrate, at this time, that the actions MDE took clearly violated federal regulations.  The Court finds that Partners has not demonstrated the likelihood of success on the merits.

### C.  Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  "To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (cleaned up).  This factor is required to grant injunctive relief.  *Id.* ("Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm.")

Partners has not adequately demonstrated that it is likely to suffer irreparable harm for several reasons.  First, MDE's past actions in denying reimbursements, if determined to be unlawful, can be remedied by an award of damages because Partners is essentially seeking monetary reimbursements for past denials.  Second, MDE's actions in terminating Partners as a sponsor, if determined to be unlawful, is subject to the administrative review process that Partners has already availed itself to and is awaiting

-11-

an outcome.  While Partners argues that a positive outcome in this proceeding would not provide adequate relief because MDE has shown no willingness to follow what its own Panel says and the Panel itself has ignored its own rules, such actions can be appealed to the Minnesota Court of Appeals.  Partners has not fully exhausted its administrative remedies, yet it seeks an "extraordinary and drastic remedy."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Third, in support of Partners' claim that it will suffer irreparable harm in the form of reputational harm, Partners has provided no evidence that its sites are terminating their relationships based on the actions the MDE took that are the subject of Partners' motion.  While it can be said that any reputational harm is attributable to both the criminal fraud investigation and MDE's subsequent action against Partners, the inference points more to the investigation, which allegedly ties Partners to individuals and entities that were accused of engaging in fraud and as a result, received national attention and news coverage.  It is likely that Partners' sites that may have terminated their relationships with Partners reacted to the investigation and drew connections from the unsealed documents.  Validity of those connections aside, it is clear that such connections could be drawn even in the absence of MDE's action against Partners.

Moreover, while loss of an entire business can be an irreparable harm, *see Ryko Mfg. Co. v. Eden Servs.*, 759 F.2d 671, 673 (8th Cir. 1985), Partners has not demonstrated

that the possibility going out of business is irreparable when there is a possibility of money damages.

Lastly, that Partners may be prevented from participating in CACFP when they have participated for many years is not an irreparable harm; federal regulations require standards for an organization's annual participation; organizations including Partners must reapply for participation in CACFP every year and MDE must use its discretion in approving institutions and consistently monitor them to ensure they are following applicable standards and rules. Because Partners has participated for many years does not mean it is entitled to participate again, especially if it is determined that, in MDE's discretion and according to applicable regulations, Partners has not met those standards.

In sum, the Court finds that Partners has not shown that it is likely to suffer harm that "is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski*, 648 F.3d at 706. Accordingly, the Court will only briefly consider the remaining *Dataphase* factors.

### D.  Balance between that harm and the harm injunctive relief would cause to the other litigants

"The balance-of-harms factor involves 'assess[ing] the harm the movant would suffer absent an injunction," as well as the harm the other parties "would experience if the injunction issued.'" *Dalpe*, 386 F.Supp 3d at 1057 (quoting *Katch, LLC v. Sweetser*, 143 F.Supp. 3d 854, 875 (D. Minn. 2015)).

The balance of harms favors MDE.  Absent a TRO, the harm that Partners alleges it will suffer is arguably harm that seeks monetary reimbursements for past claims.  If the Court enjoined MDE from enforcing its May 27 Letter, Partners could be placed in the same position of reimbursement denial.  On the other hand, MDE would be constrained in fulfilling its duty under the federal regulations to monitor compliance and to constantly assess whether entities under its control are meeting applicable standards.  Additionally, in the event Partners prevails, they can immediately be made whole through monetary damages, the payout of reimbursements owed.  On the other hand, if it is determined that Partners participated in the fraud scheme, MDE may never be made whole, as they may never be able to recoup the defrauded funds.

### E.  Public Interest

The public interest would not be served by granting the Motion for a TRO.  If Partners is indeed connected to the fraud, as the unsealed affidavits allege, MDE continuing to funnel money to an entity that knowingly or blindly served as a pass-through for the fraud is not in the public interest.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for a Temporary Restraining Order [Docket No. 14] is **DENIED**.

-14-

DATED:  October 4, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge